# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| GEORGE MATTHEWS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:15-cv-01507 |
| | ) Judge Crenshaw / Frensley |
| BRANDON COPELAND, et al., | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon Defendants' Motion for Summary Judgment. Docket No. 62. Along with their Motion, Defendants have contemporaneously filed a supporting Memorandum of Law (Docket No. 63) and a Statement of Undisputed Material Facts (Docket No. 64), along with the Affidavits of Ronald McBay ("McBay Aff.")(Docket No. 65), Brandon Copeland ("Copeland Aff.")(Docket No. 66), and Roger Tidwell ("Tidwell Aff.")(Docket No. 67).

Plaintiff has filed a "Motion in Opposition to the Defendants [*sic*] Motion for Summary Judgment" and a supporting "Memorandum" (Docket Nos. 70, 71), both of which the Court will construe as Plaintiff's Response to the instant Motion.[1] Plaintiff has additionally filed his Affidavit ("Plaintiff's Aff."). Docket No. 72. Plaintiff, however, has not responded to

---

[1] Although Plaintiff has filed a "Motion in Opposition" to Defendants' Motion with a supporting "Memorandum," which the undersigned will construe as his Response to the instant Motion, neither of these submissions contain responses to Defendants' Statement of Undisputed Material Facts. Accordingly, while Plaintiff has responded to Defendants' Motion, he has not filed a Response to Defendants' Statement of Undisputed Material Facts.

Defendants' Statement of Undisputed Material Facts, nor has he filed his own Statement of Undisputed Material Facts.

Defendants have filed a Reply. Docket No. 73.

Plaintiff, who, at all times relevant to the case at bar, was an inmate in the custody of the Tennessee Department of Correction ("TDOC") housed at the Bledsoe County Correctional Complex ("BCCX"), but who has since been transferred to the Trousdale Turner Correctional Center, filed this pro se, in forma pauperis action pursuant to 42 U.S.C . §1983, alleging in his Amended Complaint that Defendants violated his rights by utilizing excessive force against him when an unknown Officer "put leg shackles on him excessively tight sadistically and maliciously to inflict pain and cause suffering" before transporting him to the Lois DeBerry Special Needs Facility ("DSNF") on the bus. Docket No. 32. Plaintiff sues Brandon Copeland and Ronald McBay seeking compensatory and punitive damages. *Id*. Plaintiff does not specify the capacity in which he sues Defendants Copeland and McBay; accordingly, Plaintiff is deemed to sue them solely in their official capacity.[2] *Wells v. Brown*, 891 F.2d 591, 592-594 (6th Cir. 1989) (plaintiffs, including pro se prisoners, are required to specify in their §1983 actions that they are suing state defendants in their individual capacities for damages; if a plaintiff does not specify the capacity in which a defendant is sued, the Court presumes that the defendant is being sued in his official capacity).

Defendants filed the instant Motion for Summary Judgment and supporting materials on March 6, 2017, arguing that because Plaintiff cannot identify the Officer who allegedly placed

---

[2] Plaintiff additionally sued "Sgt f/n/u Duckett," but it does not appear from the record that "Sgt f/n/u Duckett" has been served, and no attorney has made an appearance on his/her behalf. Accordingly, "Sgt f/n/u Duckett" is not a proper Defendant in this action.

restraints on his ankles too tightly, he cannot state a claim against them for the alleged use of excessive force, pursuant to 42 U.S.C. §1983. Docket Nos. 62-67. Defendants additionally argue that Plaintiff has alleged that he suffered only de minimis injuries, if any at all, such that he has failed to state a claim for relief under §1983. *Id.* Finally, Defendants argue that they are entitled to qualified immunity. *Id.*

Plaintiff responds by reiterating the factual allegations of his Amended Complaint and arguing that genuine issues of material fact exist that preclude granting summary judgment. Docket Nos. 70-72.[3] Addressing first the objective component of his claim, Plaintiff argues that his allegations that: (1) he was placed in "significantly confining restraints during the transport trip on September 14th, 2015, that caused him to suffer extreme swelling in his ankles, and that when the restraints were removed, he had bruising, scarring, and lacerations/cuts"; (2) he suffered "extremely sever [*sic*]" pain; and (3) the unknown Officer "refused to take any corrective action to relieve the tightness or manner of the restraints despite the Plaintiff's cries to adjust these restraints & despite the obvious signs of physical pain that were being caused by the restraints," sufficiently "raise a genuine issue of material fact regarding the objective component of [his] claim." *Id.* at 5-6. Plaintiff further contends that his Affidavit is in direct contradiction with the Affidavits of Defendants Copeland and McBay such that the "conflicting versions of the events at issue raises a credibility question which is not appropriately resolved in the stance of determining summary judgment and is best left to the trier of fact." *Id.* at 6. Plaintiff also responds that his assertions of numbness, pain, swelling, lacerations/cuts and bleeding are

---

[3] As has been noted, Plaintiff has responded to Defendants' Motion, but not to their Statement of Undisputed Material Facts.

evidence of more than just a de minimis injury. *Id.*

Turning to the subjective component of his claim, Plaintiff argues that "determination of this issue requires consideration of factors such as 'the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted.'" *Id.* at 7, *citing Whitley*, 475 U.S. at 320-21. Plaintiff argues that genuine issues of material fact exist with regard to the relationship between the need and the amount of force that was used, the extent of injury inflicted on Plaintiff, the threat to the safety of staff and other prisoners as reasonably perceived by the Transportation officers on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response. *Id.* at 8. Plaintiff argues that "resolution of these underlying factual disputes is necessary to determining whether an Eighth Amendment violation occurred," such that Defendants motion must be denied. *Id.*

As to the identity of the Officer who shackled him, Plaintiff responds that he "has proffered since the inception of this litigation that 'one' of the two (2) Officers placed excessively tight leg restraints on him'" and that he "has been unable to secure the legal name of the individual responsible for such action" due to the concealment of the Officer's official nametag. *Id.* at 9. Plaintiff argues that he has diligently attempted to ascertain the identity of the unknown Officer but has been unable to do so due to TDOC's unresponsiveness, his inability to obtain the video footage of the day in question, and Defendants' deliberate "stonewall[ing]" of his attempts to do so, thereby "creating unavoidable circumstances beyond his control." *Id.* at 10. Plaintiff maintains that in "regard to his current inability to presently and promptly identify this unknown officer, he has presented evidence that at least one (1) of the Defendants caused him to suffer significant pain and injuries that necessitated medical attention and that such

4

actions were excessive, gratuitous and malicious in nature, thus establishing culpability of excessive force." *Id.* at 11. Plaintiff asserts that both Defendants Copeland and McBay have been put on notice of Plaintiff's intentions to hold at least one of them liable for the actions of which he complains and he argues that he can visually identify which Officer caused him harm. *Id.* at 12.

Regarding the unknown Officer's mental state, Plaintiff argues that the dismissive response he received when he notified the unknown Officer that his leg restraints were too tight "validates that the defendant(s) actions were done in a malicious and gratuitous manner to cause pain." *Id.* at 14. Plaintiff maintains that "a dismissive response from an officer is sufficient to meek the second prong of a claim for excessively forceful handcuffing." *Id.*

Addressing his injury, Plaintiff contends that he has established that he suffered more than a de minimis injury. *Id.* at 15-16. Plaintiff further contends that a prisoner alleging an Eighth Amendment violation need not prove that he suffered a serious physical injury, but rather, demonstrate instead that the infliction of pain was unnecessary and wanton; Plaintiff maintains that he has done so. *Id.*

Plaintiff argues also that Defendants are not entitled to qualified immunity because the law was clearly established that excessive cuffing is tantamount to excessive force. *Id.* at 16-20.

Defendants, in their Reply, maintain that there are no disputed facts in this case and that they are entitled to a judgment as a matter of law. Docket No. 73. Substantively, Defendants argue that Plaintiff has failed to identify which Officer placed the shackles upon him, despite the facts that the Officers were wearing nametags and Defendants provided Plaintiff with the names of every Officer who was in the vicinity on the date of the incident in question. *Id.* at 2-3.

Defendants further reply that the names of the Officers provided were obtained from a shift roster found in the prison's human resources department, not any video, because, since no investigation was warranted or undertaken, no video was preserved, and any video that had been originally taken was taped over in the normal course of business, long before the Complaint was ever filed in this case. *Id.* at 3. Defendants reiterate their contention that because Plaintiff cannot or will not identify the individual responsible for restraining him on that date, his claim must fail. *Id.* at 4.

For the reasons set forth below, the undersigned finds that there are no genuine issues as to any material fact and that Defendants are entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendants' Motion for Summary Judgment (Docket No. 32) be GRANTED.

## II. Undisputed Facts[4]

### A. Affidavit of Ronald McBay

At all times relevant to the instant action, Ronald McBay was employed by the Tennessee Department of Correction ("TDOC") as a Correctional Corporal at the Bledsoe County Correctional Complex ("BCCX"). Docket No. 65, ¶¶ 2, 3. While a TDOC employee, Cpl. McBay has never been disciplined for the mistreatment of an inmate. *Id.*, ¶ 4.

On the date of the alleged incident, Cpl. McBay was working in the BCCX transportation yard and was wearing his nametag on his uniform, as required by TDOC policy. *Id.*, ¶¶ 5, 6. Inmates are searched and shackled prior to getting on their assigned bus. *Id.*, ¶ 7. It is common

---

[4] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

practice during that process for different members of the transportation team to assist with the different tasks, including placing the appropriate restraints on each inmate. *Id.*, ¶ 8.

On the date of the alleged incident, there were 33 inmates leaving from BCCX, traveling to other destinations. *Id.*, ¶ 9. Cpl. McBay cannot recall whether he personally shackled Plaintiff, nor can he identify the officer who did, but if Cpl. McBay did place restraints on Plaintiff, he had no intent to cause him harm or to injure him in doing so. *Id.*, ¶¶ 10, 21.

Cpl. McBay always places the shackles on the inmates using the same routine: sliding an index finger between the inmate's leg and the restraint to ensure that there is adequate room to move freely, but without enough room to slip out of the restraints. *Id.*, ¶ 11. If an inmate complains that his shackles are too tight, Cpl. McBay always double checks the restraints and loosens their fit if indicated. *Id.*, ¶ 12.

It is especially important to properly secure prisoners when they are being transported from one prison to another, as they could present a security risk to the general public once they have left the prison complex. *Id.*, ¶ 13. Placing restraints over inmates' pants is prohibited as it is a known security risk and Cpl. McBay could not have allowed Plaintiff to be transported with restraints that gave him an opportunity to escape. *Id.*, ¶ 14. Inmates must wear socks that are rolled up their legs during transportation and the restraints are placed over the socks and not directly against the skin. *Id.*, ¶ 15.

Cpl. McBay does not recall any specific conversation with Plaintiff, including the alleged statements attributed to him by Plaintiff in his Amended Complaint: "Stop you-ins f—ing winning [*sic*] and get on the f—ing bus." *Id.*, ¶ 16. Cpl. McBay did not make such a statement to Plaintiff or anyone else on that date, nor would he ever. *Id.*

Cpl. McBay has no recollection of Plaintiff complaining that his shackles were too tight after they were placed, nor of Plaintiff telling him that he was injured or that his restraints were causing him pain or injury. *Id.*, ¶ 17. Had Cpl. McBay witnessed such an injury or had Plaintiff reported such an injury to him, Cpl. McBay would have loosened his cuffs if it could have been done safely, and ensured that he received proper medical care. *Id.*, ¶ 18. At no time did Cpl. McBay deny Plaintiff medical care, nor did he stop anyone else from providing medical care to Plaintiff. *Id.*, ¶ 19.

Cpl. McBay had no malice toward Plaintiff. *Id.*, ¶ 20.

**B. Affidavit of Brandon Copeland**

At the time of the filing of his Affidavit, Brandon Copeland was employed by TDOC as an Institutional Investigator at BCCX, but at all times relevant to the instant action, he was employed by TDOC as a Correctional Corporal at BCCX. Docket No. 66, ¶¶ 2, 3. While a TDOC employee, Investigator Copeland has never been disciplined for the mistreatment of an inmate. *Id.*, ¶ 4.

On the date of the alleged incident, Investigator Copeland was working in the BCCX transportation yard and was wearing his nametag on his uniform, as required by TDOC policy. *Id.*, ¶¶ 5, 6. Inmates are searched and shackled prior to getting on their assigned bus. *Id.*, ¶ 8. It is common practice during that process for different members of the transportation team to assist with the different tasks, including placing the appropriate restraints on each inmate. *Id.*, ¶ 9.

On the date of the alleged incident, there were 33 inmates leaving from BCCX, traveling to other destinations. *Id.*, ¶ 7. Investigator Copeland cannot recall whether he personally shackled Plaintiff, nor can he identify the officer who did, but if Investigator Copeland did place

8

restraints on Plaintiff, he had no intent to cause him harm or to injure him in doing so. *Id.*, ¶¶ 10, 21.

Investigator Copeland always places the shackles on the inmates using the same routine: sliding an index finger between the inmate's leg and the restraint to ensure that there is adequate room to move freely, but without enough room to slip out of the restraints. *Id.*, ¶ 11. If an inmate complains that his shackles are too tight, Investigator Copeland always double checks the restraints and loosens their fit if indicated. *Id.*, ¶ 12.

It is especially important to properly secure prisoners when they are being transported from one prison to another, as they could present a security risk to the general public once they have left the prison complex. *Id.*, ¶ 13. Placing restraints over inmates' pants is prohibited as it is a known security risk and Investigator Copeland could not have allowed Plaintiff to be transported with restraints that gave him an opportunity to escape. *Id.*, ¶ 14. Inmates must wear socks that are rolled up their legs during transportation and the restraints are placed over the socks and not directly against the skin. *Id.*, ¶ 15.

Investigator Copeland does not recall any specific conversation with Plaintiff, including the alleged statements attributed to him by Plaintiff in his Amended Complaint: "Stop you-ins f—ing winning [*sic*] and get on the f—ing bus." *Id.*, ¶ 16. Investigator Copeland did not make such a statement to Plaintiff or anyone else on that date, nor would he ever. *Id.*

Investigator Copeland has no recollection of Plaintiff complaining that his shackles were too tight after they were placed, nor of Plaintiff telling him that he was injured or that his restraints were causing him pain or injury. *Id.*, ¶ 17. Had Investigator Copeland witnessed such an injury or had Plaintiff reported such an injury to him, Investigator Copeland would have

9

loosened his cuffs if it could have been done safely, and ensured that he received proper medical care. *Id.*, ¶ 18. At no time did Investigator Copeland deny Plaintiff medical care, nor did he stop anyone else from providing medical care to Plaintiff. *Id.*, ¶ 19.

Investigator Copeland had no malice toward Plaintiff. *Id.*, ¶ 20.

### C. Affidavit of Roger Tidwell

At the time of the filing of his Affidavit, Roger Tidwell was employed by TDOC as an Institutional Investigator at the Tennessee Prison for Women, but at all times relevant to the instant action, he was employed by TDOC as a Correctional Corporal in the intake department of the Lois M. DeBerry Special Needs Facility ("DSNF"). Docket No. 67, ¶¶ 3, 4.

On September 14, 2015, while employed as a Correctional Corporal in the intake department at DSNF, Plaintiff came to to DSNF on a chain buss from BCCS. *Id.*, ¶ 5. When Plaintiff got off the bus, he reported that his shackles were too tight. *Id.*, ¶ 6. Investigator Tidwell called the nursing staff at that time to examine his legs and he subsequently received medical attention. *Id.*, ¶ 7. At no point during this exchange did Plaintiff ask for an investigation to be conducted, and, had his injuries been more than superficial, Investigator Tidwell would have reported them to the DSNF investigator. *Id.*, ¶ 8.

### D. Affidavit of George W. Matthews

At the time of the filing of his Affidavit, Plaintiff was an TDOC inmate housed at the Trousdale Turner Correctional Facility, but at all times relevant to the case at bar had been a TDOC inmate housed at BCCX. Docket No. 72, ¶¶ 2, 3.

On September 14, 2015, Plaintiff was being prepared for transfer from BCCX to DSNF for the purpose of receiving medical attention. *Id.*, ¶ 4. As Plaintiff was being prepared for

10

transport, an unknown Correctional Officer placed leg restraints on him. *Id.*, ¶ 5. As the leg restraints were placed on Plaintiff, he recognized that the restraint on his left leg was extremely tight; he informed the Officer and asked him to "please adjust the leg restraint on [his] legs." *Id.*, ¶ 6. The Officer stated to Plaintiff, "Stop you in f—ing whinng [*sic*] and get on the f—ing bus, I ain't gonna listen to no sh-t out of you' ins." *Id.*, ¶ 7. After that reply from the Officer, Plaintiff limped on to the bus to be transported. *Id.*, ¶ 8.

Approximately 5 ½ hours later, Plaintiff arrived at DSNF. *Id.*, ¶ 9. Upon getting off the bus, Plaintiff informed the Officer there that he was in extremely severe pain due to the excessive tightness of the leg restraints that were placed on him by an Officer at BCCX. *Id.* The DSNF Officer attempted to relieve the pressure of the cuffs, and at that time, both the Officer and Plaintiff noticed that his left ankle was swollen, he had lacerations/cuts, there was discoloration, and there was blood on his socks. *Id.*, ¶ 10. That Officer and Investigator Tidwell summoned the nurse and began taking photos of his left leg area. *Id.*, ¶ 11. Later, Plaintiff was given medical treatment for the wounds that he suffered as a result of the unknown Officer's actions. *Id.*

Plaintiff did nothing to cause the unknown Officer at BCCX to treat him in the manner that he did and give him a dismissive reply to his request for relief from the pain. *Id.*, ¶ 12. Although Plaintiff cannot identify the actual name of the Officer at BCCX who placed the leg restraints on him, he can positively visually identify the individual who was responsible for the actions described. *Id.*, ¶ 13.

**E.  Other Undisputed Facts**[5]

Plaintiff was treated by DSNF nursing staff for two small cuts on the back of his ankles, and a small amount of blood was noted.  Docket No. 32, p. 33.  There is no evidence in the record that Plaintiff ever returned for treatment of these superficial wounds, or that additional treatment was required beyond the bandage that was applied by the DSNF nurse.  *Id.*

### III.  Law and Analysis

**A.  Local Rules 56.01(c) and (g)**

With respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c.  Response to Statement of Facts.**  Any party opposing the motion for summary judgment must respond to each fact set forth by the movant ...
>
> . . .
>
> **g.  Failure to Respond.**  Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

As discussed above, although Plaintiff has responded to the instant Motion for Summary Judgment, he has failed to respond to Defendant's Statement of Undisputed Material Facts or file his own Statement of Undisputed Material Facts.  Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment."  Accordingly, there are no genuine issues as to those material facts and all that

---

[5] These facts are set forth in Defendants' un-responded to Statement of Undisputed Facts but have heretofore not yet been recounted.

12

remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

**B. Motion for Summary Judgment**

It would be inappropriate to grant Defendants' Motion solely on the ground that Plaintiff has failed to respond to their Statement of Undisputed Material Facts. *See, e.g., Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants have met their burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the

evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

### C. 42 U.S.C. § 1983

#### 1. Generally

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 32. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978).  The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

### 2.  Eighth Amendment

#### a.  Generally

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain."  *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong

test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

### b. Excessive Force

An inmate's post-conviction excessive force claim is raised "exclusively under the Eighth Amendment's cruel and unusual punishment clause." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002). While the Eighth Amendment's prohibition against cruel and unusual punishment prohibits the wanton and unnecessary infliction of pain upon prisoners, the mere fact that a prisoner was subjected to physical contact which may have been forceful does not, by itself, show an Eighth Amendment violation. *Parrish v. Johnson,* 800 F.2d 600, 604-05 (6th Cir. 1986). The good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment. *See Whitley v. Albers*, 475 U.S. 312, 319-20 (1986).

Where a prison security measure is involved, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm." *Id.* at 320-21.

### D. The Case at Bar

As an initial matter, a "public official is liable under §1983 only if he causes the plaintiff to be subjected to a deprivation of his constitutional rights." *McKinley v. City of Mansfields*, 404 F.3d 418, 438 (6th Cir. 2005), *quoting Baker v. McCollan*, 443 U.S. 137, 142 (1979). In the case at bar, it is undisputed that Plaintiff does not know the identity of the Officer who shackled him.

16

Plaintiff's Aff., ¶ 5. Absent allegations that Defendant Copeland and/or Defendant McBay personally caused Plaintiff to be subjected to a deprivation of his constitutional rights, Plaintiff cannot hold them liable and they are entitled to a judgment as a matter of law.

Moreover, Defendants have argued in the alternative that they are entitled to qualified immunity. Qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). Qualified immunity generally shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1983). The right at issue "must have been articulated with a significant degree of particularity," so that it is sufficiently clear to a reasonable official that his or her conduct would violate the right at issue. *Eugene D. v. Karman*, 889 F.2d 701, 706 (6th Cir. 1989). Qualified immunity is available as long as the official's actions "could reasonably have been thought consistent with the rights [he or she is] alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987).

The initial inquiry and threshold question, according to the Supreme Court, is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.*, *citing Siegert v. Gilley,* 500 U.S. 226, 232, 111 S. Ct. 1789, 1973, 114 L. Ed. 2d 277 (1991). If no constitutional right was violated, there is no necessity for further inquiry. *Id.*

A critical question is whether "any official in the defendants' position would understand

that what he did violated those rights." *O'Brien v. City of Grand Rapids*, 23 F. 3d 990, 999 (6th Cir. 1994). Qualified immunity, therefore, "does not turn on the subjective good faith of the official; rather, it turns on the 'objective legal reasonableness' of his actions, assessed in light of the legal rules that were 'clearly established' at the time the actions were taken." *Id., quoting Harlow*, 457 U.S. at 818-19. "If officers of reasonable competence could disagree on whether the conduct violated the plaintiff's rights," qualified immunity will apply. *Id.*, *quoting Grossman v. Allen*, 950 F. 2d 338, 341 (6th Cir. 1991)(citations omitted).

  In the instant action, it is undisputed that both Defendant Copeland and Defendant McBay were working in the BCCX transportation yard on the day in question and that it is customary for different members of the transportation team to assist with the different tasks, including putting the appropriate restraints on each inmate, but that neither Defendant Copeland nor Defendant McBay recall whether they personally shackled Plaintiff, nor can they identify who did, but if either Defendant Copeland or Defendant McBay shackled Plaintiff, they would have placed the shackles over his socks and not directly against his skin, and they would have done so by sliding an index finger between Plaintiff's leg and the restraint to ensure that there was adequate room to move freely but without enough room to slip out of the restraints. Copeland Aff., ¶¶ 5, 9, 10, 11, 15; McBay Aff., ¶¶ 5, 8, 10, 11, 15. It is further undisputed that neither Defendant Copeland nor Defendant McBay recall any specific conversation with Plaintiff or recall Plaintiff complaining that his shackles were too tight, were causing him pain, or were causing him injury. *Id.*, ¶¶ 16, 17. Had either Defendant Copeland or Defendant McBay witnessed an injury or had Plaintiff reported an injury to them, they would have loosened the cuffs if it could have been done safely and would have ensured that Plaintiff received proper

18

medical care. *Id.*, ¶ 18. Neither Defendant Copeland nor Defendant McBay denied Plaintiff medical care, nor did they stop anyone else from providing medical care to Plaintiff. *Id.*, ¶ 19.

It is additionally undisputed that if either Defendant Copeland or Defendant McBay shackled Plaintiff on the day in question, neither Defendant Copeland nor Defendant McBay intended to cause him harm or injury in doing so, and neither Defendant Copeland nor Defendant McBay had malice toward Plaintiff. *Id.*, ¶¶ 20, 21. Finally, it is undisputed that it is especially important to properly secure prisoners when they are being transported from one prison to another, as they could present a security risk to the general public once they have left the prison complex. *Id.*, 13.

Given the undisputed facts presented, Plaintiff can neither establish that his constitutional rights were violated nor that Defendant Copeland and/or Defendant McBay were in any way involved in shackling him. Even if Defendant Copeland or Defendant McBay had been the Officer who shackled Plaintiff, given the evidence presented herein, he would be entitled to qualified immunity.

### IV. Conclusion

For the foregoing reasons, the undersigned finds that there are no genuine issues as to any material fact and that Defendants are entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendants' Motion for Summary Judgment (Docket No. 62) be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have

fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

                                                JEFFERY S. FRENSLEY
                                                United States Magistrate Judge